UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL   'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Rebecca Edelson | Adrian Pruetz |
| Seong Kim | Rex Hwang |
| James Wald | |

**Proceedings:**   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 192, filed March 6, 2015)

PLAINTIFF's *EX PARTE* APPLICATION TO STRIKE (Dkt. No. 267, filed March 31, 2015)

## I.    INTRODUCTION

His & Her Corp. ("His & Her" or "plaintiff") filed this trademark infringement action on June 24, 2011.  The operative Second Amended Complaint ("SAC"), filed on January 12, 2015, names as defendants Shake-N-Go Fashion, Inc. ("Shake-N-Go"); Model Model Hair Fashion, Inc. ("Model Model"); C&J Beauty Supply, Inc.; Ti Gi Beauty, Inc.; Ti Gi Beauty Supply; Pink Beauty Supply & Salon, Inc.; Seonhei Kim d/b/a Sam's Beauty Plus; KI Hwan Han d/b/a/ Ebony Wig & Beauty Supply; Taeseob & Young's Mission Beauty, Inc. d/b/a/ Wow Beauty Supply; and Basket Beauty Supply Inc. d/b/a Basket Beauty Supply.  Dkt. No. 167.  Plaintiff alleges that Shake-N-Go and Model Model, as well as retailers who have sold those defendants' products, have infringed plaintiff's trademarked "CUTICLE" line of hair extensions by marketing a line of hair extensions bearing the confusingly similar marks "Cuticle Remy XQ" and "Cuticle Remy Qutix."  Id.  The SAC asserts claims for (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) false designation of origin in violation of 15 U.S.C. § 1125(a), (3) unfair business practices in violation of California Business and Professions Code § 17200, and (4) common law trademark infringement and unfair competition.  Id. Defendants have counterclaimed on the grounds that (1) the asserted trademark should be cancelled because it is generic, and (2) plaintiff committed fraud on the Trademark

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
| --- | --- | --- | --- |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

Office. Dkt. No. 168. Defendants filed a motion for summary judgment on March 6, 2015, on which the Court held a hearing on April 6, 2015. Dkt. No. 192. For the reasons that follow, that motion is **DENIED**.

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Additional facts are cited as necessary in Section IV, *infra*.

Plaintiff is a Los-Angeles based retailer that sells hair products including wigs, hair pieces, hair accessories, and—most importantly for purposes of this case—hair extensions. Def.'s Uncontroverted Material Facts ("DMF") ¶ 1; Pl.'s Statement of Genuine Issues ("SGI") ¶ 1. Hair extensions are lengths of human or synthetic hair that can be attached to a person's existing hair to add length and volume. Pl.'s Additional Material Facts ("PMF") ¶ 13; Def.'s Response to Plaintiff's Additional Material Facts ("RPMF") ¶ 13.

Defendants Shake-N-Go and Model Model are wholesalers under common ownership that sell hair products to approximately 4,000 retailers across the United States. DMF ¶ 14; SGI ¶ 14. The other defendants in this action are retailers and customers of Shake-N-Go and Model Model that have sold the allegedly infringing hair extensions. DMF ¶ 15; SGI ¶ 15. Although plaintiff sells hair products (including hair extensions) made by other companies, plaintiff has never sold the allegedly infringing hair extensions made by Shake-N-Go or Model Model. DMF ¶¶ 4, 16; SGI ¶¶ 4, 16.

The asserted trademark in this case pertains to plaintiff's "CUTICLE" brand hair extensions, which are made with real human hair that has the outer layer (referred to as a "cuticle" layer) still attached. DMF ¶ 3; SGI ¶ 3. The primary customers of the CUTICLE extensions are adult women, the majority of whom are African-American. DMF ¶ 10; SGI ¶ 10. These customers are located throughout the United States, mostly in major metropolitan areas. DMF ¶ 8; SGI ¶ 8. The CUTICLE line includes hair extensions made in five ways: hand-tied single weft extensions, machine-made double weft extensions, I Tip extensions, U tip extensions, and skin extensions. DMF ¶ 11; SGI ¶ 11. Most CUTICLE extensions that are sold are of the hand-tied single weft variety. DMF ¶ 12; SGI ¶ 12. CUTICLE extensions are designed to be woven, sewn, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

otherwise attached to the wearer's hair for weeks or months, although they can be worn for shorter periods of time.  DMF ¶ 20; SGI ¶ 20.

On February 9, 2004, the United States Patent and Trademark Office ("PTO") refused plaintiff's attempt to register a trademark for "Cuticle Hair," deeming that term to be "merely descriptive."  Mendelson Decl. Ex. 9.  Plaintiff subsequently abandoned the application for that mark.  DMF ¶ 40; SGI ¶ 40.  On October 4, 2004, plaintiff filed a trademark application for "Cuticle" in connection with "human hair extensions for men and women."  Mendelson Decl. Ex. 11.  In 2005, the PTO granted a federal trademark registration for the CUTICLE mark for use with human hair extensions.  PMF ¶ 29.  The trademark attained incontestable status in 2011.  PMF ¶ 30.

Plaintiff alleges that Shake-N-Go's "Cuticle Remy XQ" hair extensions, and Model Model's "Cuticle Remy Qutix" hair extensions, infringe plaintiff's CUTICLE mark.[1]  The Cuticle Remy XQ and Model Model Cuticle Remy products are machine-made double weft extensions made of human hair.  DMF ¶ 18; SGI ¶ 18.  The primary consumers of these products are adult women throughout the United States, the majority of whom are African-American.  DMF ¶¶ 17, 19; SGI ¶ 17, 19.  Defendants have sold these hair extensions since approximately 2011.  PMF ¶ 34.  In August 2011, prior to bringing the allegedly infringing products to market, Shake-N-Go applied to register the mark "Cuticle Remy" with the PTO in connection with hair products including hair extensions.  Pl. Request for Judicial Notice ("PRJN") Ex. 2.  This application was refused by the PTO on December 13, 2010 on the ground that "Cuticle Remy" is confusingly similar to His & Her's CUTICLE mark.  Id.; PMF ¶ 49.

On May 23, 2012, defendants filed a motion for summary judgment on the ground that the CUTICLE mark is generic and therefore invalid.  Dkt. No. 45.  On August 30, 2012, the Court granted summary judgment for defendants, finding as a matter of law that " 'cuticle hair' is a generic term that is understood to refer to hair extensions with the cuticle (the outer layer of human hair) laying in the same direction and not to refer

---

[1]Although the parties disagree on the meaning attached to "cuticle" in the hair industry, they agree that within that industry, the word "remy" refers to a type of hair extension in which the cuticles are arranged to flow in the same direction.  DMF ¶ 35; SGI ¶ 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:11-cv-05323-CAS(VBKx) | | Date | March 30, 2015 |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | | |

specifically to products manufactured and sold by" plaintiff.  Dkt. No. 103 at 2.  Plaintiff appealed, and on May 12, 2014, the United States Court of Appeals for the Ninth Circuit reversed, finding that this Court had erred in weighing the evidence by discounting the probative value of plaintiff's consumer and wholesaler declarations, and by discrediting certain testimony.  The Ninth Circuit held "that genuine issues of material fact exist as to the genericness of Plaintiff's 'cuticle' mark," and "remand[ed] the case for trial."  See His & Her Corp. v. Shake-N-Go Fashion, Inc., 572 F. App'x 517, 518 (9th Cir. 2014).[2]

On March 6, 2015, defendants filed a second motion for summary judgment on the grounds that (1) "cuticle" is a generic term that cannot be trademarked, and (2) no likelihood of confusion exists as to the source, sponsorship, or affiliation of defendants' products with regard to plaintiff's trademark, so that plaintiff cannot establish infringement.  Dkt. No. 192.  On March 13, 2015, in response to an opposed ex parte application by plaintiff, the Court issued an order striking the instant motion to the extent it sought a ruling that the asserted trademark is invalid because it is generic, finding that a ruling that the mark is generic as a matter of law would violate the Ninth Circuit mandate discussed above.  Dkt. No. 232.  Accordingly, this order addresses only the issue of infringement.  On March 16, 2015, plaintiff filed an opposition to the motion for summary judgment.  Dkt. No. 210.  Defendants filed a reply on March 23, 2015.  Dkt. No. 257.[3]

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

---

[2]On December 2, 2014, this action was transferred to the undersigned judicial officer because of the retirement of the previously presiding judge.

[3]On March 31, 2015, plaintiff filed an ex parte application to strike defendants' reply papers, Dkt. No. 267, which defendants opposed, Dkt. No. 271.  In light of the Court's decision to deny summary judgment, the Court **DENIES** plaintiff's application without reaching its merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

### A.    Evidentiary Objections

The Court first addresses plaintiffs' lengthy objections to defendants' consumer surveys conducted by Dr. Cynthia R. Cohen and Dr. Henry D. Ostberg, to which defendants have responded in kind. See Dkt. Nos. 212, 253. In the trademark context, the Ninth Circuit has "long held that survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant," and that "technical inadequacies in a survey, including the format of the questions or the manner in which it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
| --- | --- | --- | --- |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

was taken, bear on the weight of the evidence, not its admissibility." <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.</u>, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal citations, quotation marks, and alterations omitted); <u>see also</u> <u>E. & J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1292 (9th Cir. 1992) (similar); 6 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 32:158 (4th ed. 2015) [hereinafter "McCarthy"] ("The usual rule is that a professionally conducted survey that relates to the facts in issue will be admitted into evidence, with any deficiencies or shortcomings serving to reduce the weight the survey is given.").

Dr. Cohen has a PhD in Educational Psychology, has been a trial consultant since 1985, and has conducted forty-two online surveys, including four prior Lanham Act confusion surveys. Cohen Decl. ¶ 1 & Ex. 1 at 2. She conducted a double-blind online survey in which respondents were shown a screenshot that either displayed Shake-N-Go's Cuticle Remy XQ Sensuous Wave hair extension product, or for the control group, Wow Beauty Supply's Remy Silk Wave by Goddess product. The purpose of the study was to determine the "extent to which survey respondents will make a connection between the source of Defendants' products even when the marks have been removed." Cohen Decl. Ex. 1 at 2–4. The survey asked questions designed to narrow the respondents to defendants' likely customers, and after the narrowed range of respondents were shown one of the screenshots, they were asked, "What company puts out this product?" and related questions. <u>Id.</u> at 4–6. No survey respondent in either the treatment or the control group identified His and Her or "Cuticle" as the source of the product. <u>Id.</u> at 8–9, 14–15. Aided by an expert of its own, plaintiff (among other criticisms) questions Cohen's qualifications, criticizes Cohen's control group on the ground that it was too dissimilar from the test group, argues that Cohen made her survey universe too broad by including consumers of synthetic hair extensions and too narrow by excluding men and targeting only a handful of cities, and contends that Cohen made various errors in instructing and questioning the respondents, such that the results are not probative of actual or likely confusion. Dkt. No. 212 at 3–11. Having considered the parties' arguments, the Court concludes that the Cohen survey was conducted pursuant to generally acceptable principles and is relevant, and that plaintiff's methodological critiques go to the weight rather than the admissibility of the survey.

Dr. Ostberg has a law degree as well as an MBA and a Ph.D., and has conducted or supervised over 2000 consumer surveys. Ostber Decl. Ex. 1. Dr. Ostberg conducted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

an online, double-blind "Eveready survey," which McCarthy recognizes as a "standard and widely accepted format to prove the likelihood or non-likelihood of confusion." McCarthy § 32:174. Dr. Ostberg interviewed 220 female potential hair extension purchasers, and began by explaining the difference between generic names and brand names, illustrated with examples such as "hamburger" and "Big Mac." Ostberg Decl. Ex. 1 at 4–5. Respondents were told not to guess. Id. at 5. The interviewees were then shown (in random order) "CUTICLE" as well as the generic names "SYNTHETIC" and "PONYTAIL" and the brand names "REVLON" and "OUTRE." With regard to each name, the respondents were asked: "In connection with a hair extension or hair weave product, do you think that this is a generic name OR a brand name OR you don't know?" Id. at 6. As explained in more detail below, the results were unfavorable to plaintiff, with a majority of respondents indicating that they thought CUTICLE was a generic name. Plaintiff and its expert point out aspects of the Ostberg study that they contend should have been done differently but, as with the Cohen survey, the Court is not persuaded that the Ostberg survey is so deficient as to be inadmissible. Additionally, as to both studies, "the absence of competing survey evidence . . . significantly undermines the efficacy of plaintiff['s] arguments that defendants' evidence is so unreliable that it must be excluded," as plaintiff's methodological criticisms "would have been substantially aided by proof that the 'correct' methodology would have led to a different result." Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc., No. 1:03 CV 414, 2006 WL 62846, at *3 (W.D. Mich. Jan. 10, 2006). For these reasons, the Court OVERRULES plaintiff's objections to the Cohen and Ostberg declarations.[4]

**B.    Likelihood of Confusion**

"The core element of trademark infringement is the likelihood of confusion, _i.e._, whether the similarity of the marks is likely to confuse customers about the source of the products."[5] E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir.

---

[4]The Court addresses the other parties' evidentiary objections only where it relies on the objected-to evidence. To the extent that the Court cites evidence herein that either party objects to as irrelevant, those objections are OVERRULED.

[5]This is also the case for plaintiff's related state law claims, of which the Court does not undertake a separate analysis. See Cleary v. News Corp., 30 F.3d 1255,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

1992).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks."  Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998).  The plaintiff has the burden of proving likelihood of confusion at trial. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 122 (2004).

The Ninth Circuit applies the eight-factor "Sleekcraft test" to determine whether a likelihood of confusion exists.  See AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)).  The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood that the parties will expand their product lines.  Id.  "[T]his multi-factor approach must be applied in a flexible fashion," and the "factors are intended to function as a proxy or substitute for consumer confusion, not a rote checklist."  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012); see Fortune Dynamic, 618 F.3d at1030–31 ("The Sleekcraft factors are not a scorecard.").  "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." Brookfield Commc'ns v. W. Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999).

"Given the open-ended nature of this multi-pronged inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored." Rearden, 683 F.3d at 1210; see Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002) ("Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." (internal quotation marks and citations omitted)).  Additionally, close cases should be resolved in favor of the senior user of the mark.  Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 n.14 (9th Cir. 1997).  For the reasons that follow, the Court is not persuaded that this case presents an exception to the general rule that the jury should determine whether confusion is likely.

---

1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

### 1.    Strength of the Plaintiff's Mark

A mark's strength is based on (1) its conceptual strength and (2) its commercial strength.  See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000). "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." Fortune Dynamic, 618 F.3d at 1032–33. "From weakest to strongest, marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." GoTo.com, 202 F.3d at 1207.  Weaker marks are afforded less protection than strong ones, with generic marks afforded no protection at all.  Matrix Motor Co. v. Toyota Jidosha, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003). "Commercial strength is based on 'actual marketplace recognition.' " Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011) (quoting Brookfield, 174 F.3d at 1058).

#### a.    Conceptual Strength

Defendants argue that the CUTICLE mark is generic, while plaintiffs argue that it is suggestive.  Generic marks "give the general name of the product; they embrace an entire class of products" and "simply state what the product is." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). Descriptive marks "define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." Id.  A suggestive mark requires that consumers "use imagination or any type of multistage reasoning to understand the mark's significance." Id.  "The descriptive-suggestive borderline is hardly a clear one." Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010) (quoting 2 McCarthy on Trademarks § 11:66).  "[A] mark can be suggestive and still convey information about a product." Id. at 1119.  For example, the Ninth Circuit has noted that marks found to be "suggestive" include " 'CITIBANK' for an urban bank, 'CLASSIC COLA' for a soft drink, 'DIAL-A-MATTRESS' for mattress sales, and 'FLORIDA TAN' for suntan lotion." Id. (citing McCarthy §11:72).

Defendants argue that the CUTICLE mark is generic because it is widely used in the hair product context to "refer[] to good quality hair in general and hair extensions where the cuticle is still attached in particular." Mot. at 16.  They submit evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|------------------------|------|----------------|
| Title    | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

including, for example, third-party commercial uses of the term "cuticle" to describe human hair products with intact cuticles.  See, e.g., Mendelson Decl. Exs. 3–7, 27. Defendants also point out that plaintiff itself has used the word "cuticle" in other contexts and once filed a petition to cancel a registered trademark in which plaintiff argued that the phrase "fortified cuticles" was composed of "unregistrable components." DMF ¶ 42; SGI ¶ 42.

But the Ninth Circuit has already held "that genuine issues of material fact exist as to the genericness of Plaintiff's 'cuticle' mark."  His & Her Corp. v. Shake-N-Go Fashion, Inc., 572 F. App'x 517, 518 (9th Cir. 2014).  This remains the case on the present evidentiary record, as defendants have not shown as a matter of law that "cuticle" "simply state[s] what the product is" or "give[s] the general name of the product," Kendall-Jackson, 150 F.3d at 1047 n.8.  Rather, factual issues remain, as shown by defense-affiliated witness testimony that "cuticle" is not itself a product, and defense-submitted evidence that shows that companies that use "cuticle" in the hair extension context often explain their use of that term in some detail, suggesting that its connection to the products at issue is not necessarily obvious.  See AMF ¶¶ 71, 74.  Additionally, federally registered marks are presumed not to be generic.  KP Permanent Make-Up, 408 F.3d 596, 604 (9th Cir. 2005).  Taking the evidence and inferences in the light most favorable to plaintiff, a jury could conclude that the mark is at least descriptive.[6]  But as plaintiff concedes, no reasonable juror could find the mark to be a conceptually strong fanciful or arbitrary one.

      b.    Commercial Strength

Even a descriptive mark "may be strengthened by such factors as extensive advertising, length of exclusive use, [and] public recognition."  Entrepreneur Media, 279

---

    [6]A descriptive mark "is entitled to trademark protection only if 'it has acquired secondary meaning, i.e., it has become distinctive of the applicant's goods in commerce.' "  Entrepeneur Media, 279 F.3d at 1142 n.3 (citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985)).  Here, however, even if the CUTICLE mark is only descriptive, it is entitled to some trademark protection because its incontestable status "serves as conclusive proof that the mark has secondary meaning."  Id. (citing Park 'N Fly, 469 U.S. at 205).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|--------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

F.3d at 1144 (internal quotation marks and citations omitted). Arguing that there is no evidence of substantial marketplace recognition, defendants first point to the Ostberg survey, in which "CUTICLE was perceived to be a generic name, rather than a brand name, by a majority (60%) of a cross-section of the female potential hair extension or hair weave purchasers interviewed," with only 16% of respondents identifying it as a brand name. Ostberg Decl. Ex. 1 at 8.[7]  This survey supports defendants' argument that the mark is weak, especially in the absence of any competing survey evidence submitted by plaintiff. However, plaintiff does present expert testimony that a jury could credit in deciding to discount the probative value of the survey. See generally Nowlis Decl. Among other things, plaintiff's expert opines that Ostberg erred by not limiting the survey universe to human hair extension consumers and by not rotating the order of the description of brand names and generic names. Id. ¶¶ 10, 16–17, 23–26. Defendants also cite the Cohen survey, described above, which they argue shows that consumers are not aware of CUTICLE as a brand. This evidence also favors defendants, but as with the Ostberg survey, a jury could choose to discount it in light of plaintiff's expert testimony criticizing it.

     In opposition, plaintiff highlights that it has sold CUTICLE-branded hair extensions for over a decade, and offers dozens of declarations from consumers and persons in the hair industry asserting that the persons recognize CUTICLE as a particular brand of hair extensions.[8]  See Dkt. No. 218; AMF ¶ 18. Plaintiff submits evidence that it has sold over 300,000 units of its CUTICLE-brand hair extensions. AMF ¶ 27. Finally, plaintiff contends that it has spent over $1.3 million on marketing and advertising the CUTICLE brand in multiple channels, and points to traffic to its website. AMF ¶¶ 20–26. As defendants point out, however, the evidence of advertising expenditures is of limited use because much of it was clearly spent on promoting His & Her generally rather than CUTICLE-branded items particularly, and the sales volume

---

     [7]By way of comparison, 97% and 54% of respondents correctly identified "Revlon" and "Outre," respectively, as brand names. "Synthetic" and "ponytail" were correctly identified as generic names by 81% and 75% of respondents, respectively. Ostberg Decl. Ex. 1 at 8–9.

     [8]The Court OVERRULES defendants' objections to these declarations, finding that the objections go to the weight rather than the admissibility of the evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

figures would be more instructive if plaintiff had submitted evidence enabling a comparison with its competitors.  See Multi Time Mach., Inc. v. Amazon.com, 926 F. Supp. 2d 1130, 1139–40 (C.D. Cal. 2013).[9]

On the whole, although plaintiff has not submitted overwhelming evidence of commercial strength, a jury could conclude from plaintiff's submitted declarations and other evidence that the strength of plaintiff's mark has been augmented somewhat by advertising and market penetration.

c.      Conclusion on Strength of Mark

Although triable issues of fact remain as to the categorization of plaintiff's mark, plaintiff does not even argue that it could be considered conceptually stronger than suggestive, a category entitled to relatively weak trademark protection.  Plaintiff has submitted some evidence of commercial strength, albeit evidence that is of limited value without comparisons to other industry brands, and which a jury could find unpersuasive for other reasons.  Against this evidence, defendants have submitted survey findings that tend to indicate a low level of CUTICLE brand recognition among relevant consumers. Finally, the CUTICLE mark was federally registered in 2005, and attained incontestable status in 2011.  AMF ¶¶ 29–30; RAMF ¶¶ 29–30.  Although incontestable status does not require a finding that the mark is strong or that confusion is likely, see Entrepreneur Media, 279 F.3d at 1142 n.3, it "adds something to the scales," Network Automation, 638 F.3d at 1149 (discussing the strength of the mark factor).   On balance, even viewing the evidence in the light most favorable to plaintiff, the mark is relatively weak, and this factor favors defendants.  Still, the degree to which this factor favors defendants, and the weight to which it is entitled, are contingent on the resolution and weighing of factual issues, and on other Sleekcraft factors.  See Brookfield, 174 F.3d at 1058–59 (holding

[9]Defendants also argue that plaintiff's consumer and "industry leader" declarations should be disregarded or heavily discounted because for reasons including purported bias in favor of or affiliation with plaintiff.  But see His & Her Corp., 572 F. App'x at 518 (holding that this Court previously erred in " 'discount[ing] somewhat the probative value' of [His & Her's] consumer and wholesaler declarations" in finding the CUTICLE mark to be generic as a matter of law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          '**O**'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title    | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

that this factor is of "diminished importance" where closely related products and highly similar marks are involved).

### 2. Relatedness or Proximity of the Goods

"[T]he more closely related the goods are, the more likely consumers will be confused by similar marks." Entrepreneur Media, 279 F.2d at 1147. "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." Id. (quoting Sleekcraft, 599 F.2d at 348 n.10).

Here, the two goods are of the same type: human hair extensions with intact cuticles, in comparable price ranges. Defendants argue that the parties' products only overlap on "machine made double weft" hair extensions, and not with regard to other types of hair extensions plaintiffs sell under the CUTICLE brand, DSF ¶¶ 11–12; SGI ¶¶ 11–12, but do not contest that single weft and double weft hair extensions are often sold in competition with each other, AMF ¶ 15; RAMF ¶ 15. Moreover, the law does not demand complete identity of goods, as defendants seem to contend. In Entrepreneur Media, for example, the Ninth Circuit stated that this factor "does not necessarily require a close proximity before goods will be found related," and noted, "where 'both companies offer products and services relating to the entertainment industry generally . . . [the companies] are not properly characterized as non-competitors.'" 279 F.3d at 1147 (emphasis added) (quoting Brookfield, 174 F.3d at 1056). Viewing the evidence in the light most favorable to plaintiff, this factor strongly favors plaintiff because a jury could easily conclude that the goods would be thought to come from the same source if sold under the same mark.

Defendants argue that, to the extent this factor favors plaintiff, it should be disregarded because the mark is weak. Defendants rely on Entrepreneur Media, 279 F.3d at 1147–48, in which the Ninth Circuit applied "a sliding scale approach as to the weight that relatedness will carry dependent upon the strength of the trademark holder's mark." But first, as noted above, there are genuine issues of material fact as to the mark's strength, so it cannot be said as a matter of law precisely how the sliding scale approach affects the weight assigned to this factor. Second, the Entrepreneur Media court reviewed  a grant of summary judgment in favor of a plaintiff. Id. at 1138. On that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

distinguishable procedural posture, while considering products arguably less related than those here—one magazine that featured articles written by independent authors and generated revenue through sales and revenue, and one free magazine that earned revenue solely by contracting with business clients to place promotional articles—the court found that the relatedness factor did not "weigh heavily in favor of likely confusion as a matter of law." Id. at 1148 (emphasis added). The court did not hold that, when a defendant moves for summary judgment, the relatedness factor is irrelevant or nearly so unless the plaintiff's mark is strong.

In sum, this factor favors plaintiff and there are genuine issues of material fact as to the weight the factor should be afforded.

### 3.      Similarity of the Marks

"The similarity of the marks will always be an important factor." Brookfield, 174 F.3d at 1054. To determine the similarity of the marks, the courts look to "sight, sound, and meaning." Rearden, 683 F.3d at 1211. The "marks must be considered in their entirety and as they appear in the marketplace." GoTo.com, 202 F.3d at 1206. Accordingly, "[d]ifferent packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion." Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 997 (C.D. Cal. 2002) (quoting Packman v. Chicago Tribune Co., 267 F.3d 628, 644 (7th Cir. 2001)). "[S]imilarities are weighed more heavily than differences." Fortune Dynamic, 618 F.3d at 1032.

In terms of sound and meaning, a jury could find the marks quite similar because of the shared first word "Cuticle," which relates directly to the products being sold. Defendants counter that their addition of the words "Remy" and "XQ" or "Qutix" renders the two marks dissimilar. But this argument is of limited persuasive value because the products in question are of the same type and because the word "remy" specifies a kind of hair, so that a consumer could think that the added words signified a variety of product within plaintiff's CUTICLE line. These circumstances distinguish the cases on which defendants rely for the proposition that adding additional words makes a mark dissimilar. See, e.g., Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1051–53 (C.D. Cal. 2013) (finding bread retailer's "Stonefire" mark not to be similar to restaurant's "Stonefire Grill" mark where the additional word made clear that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title    | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

the marks referred to different types of businesses). Weighing similarities more heavily than differences, it cannot be said as a matter of law that the additional words make the marks dissimilar on a sound and meaning level.

Defendants argue persuasively that the marks are not visually similar in the marketplace, however, because plaintiff's product is packaged in a clear plastic bag with CUTICLE displayed in relatively small print on a hangtag and wrapped band inside the bag, whereas defendants' products are packaged in white boxes with brightly colored images that display "XQ" and "Qutix" in large letters, and "Cuticle Remy" in somewhat smaller letters. Defendants submit a comparison of the products' packaging reproduced in the top image below. Mot. at 4. Plaintiff submits several examples of its packaging, two of which are reproduced below. The bottom left image is of a hangtag, like the one that can be seen inside the bag on defendants' submitted image above; the bottom right image is of is a band that is wrapped around the hair extension itself. 2015 Chung Decl. ¶ 17 & Ex. 5.







**His & Her Cuticle**          **Shake-N-Go XQ**          **Model Model Qutix**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

 

Although there is still some visual similarity because of the shared word "Cuticle," there are marked differences in how consumers would perceive the appearance of the marks when viewing the products as packaged.[10]  Even placing more weight on the similarities, the sight dimension tilts in favor of defendants.  Still, because plaintiff's and defendants' products are marketed through other channels than physical stores, including the internet, consumers may not always see defendants' distinctive physical packaging in conjunction with the words "Cuticle Remy XQ" or "Cuticle Remy Cutix."

Viewing the evidence in the light most favorable to plaintiff, the marks are somewhat similar in the sound and meaning dimensions, but rather dissimilar on the sight dimension.  This creates a genuine issue of material fact as to this <u>Sleekcraft</u> factor. <u>See</u> <u>Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n</u>, 311 F. Supp. 2d 1023, 1041 (D. Or. 2004) (similarity factor favored plaintiff with regard to marks "Tillamook cheese" and "Tillamook jerky" because of shared dominant word "Tillamook," even though packaging was "not otherwise similar").

---

[10]Plaintiffs point to a hangtag and sticker produced in discovery that bear the words "Cuticle Remy," but not "XQ" or "Cutix," as evidence that the additional words are not always used in packaging defendants' products.  <u>See</u> Edelson Decl. Ex. 3 (Kim Depo. at 192:1-9); Peterson Decl. Ex. 5.  Defendants respond, however, with evidence that these hangtags and stickers are always placed inside the packaging that prominently bears the words "XQ" or "Cutix," and thus do not affect the appearance visible to consumers deciding which product to purchase.  Hwang Decl. Ex. 15 (Ough Depo. at 146:18–148:15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

**4.      Evidence of Actual Confusion**

Evidence of actual confusion is strongly probative of future confusion. Entrepreneur Media, 279 F.3d at 1150.  However, "[t]he absence of such evidence need not create an inference that there is no likelihood of confusion." Gallo Cattle Co., 967 F.2d at 1292; see also Brookfield, 174 F.3d at 1060 ("[D]ifficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.").

Defendants argue that the Cohen survey conclusively shows that there is no actual confusion.  Although the Court finds the Cohen survey admissible, plaintiff has submitted expert criticisms of its design that a jury could credit in deciding not to give the survey conclusive weight.  Additionally, the Ninth Circuit has noted that the fact that a likelihood of confusion survey "was conducted over the internet (thereby failing to replicate real world conditions)" can detract from the weight given to a survey. Fortune Dynamic, 618 F.3d at 1037–38.[11]

Additionally, even though a plaintiff need not do so to avoid summary judgment on likelihood of confusion, Sleekcraft, 599 F.2d at 352, plaintiff does submit some evidence of actual confusion.  Six consumers declare under penalty of perjury that they have encountered "Cuticle Remy" hair extensions and incorrectly associated them with His & Her.  See Dkt. No. 218 (Decls. of Maty Celine, Laura Gerdenhire, Nori Flores, Monica Hyatt, Elizabeth Smith, and Vernon Williams).  And ten His & Her employees in addition to Steven Chung have declared that they received calls from consumers asking for "Cuticle Remy" hair extensions, apparently believing that they were offered by Him & Her.  See Dkt. No. 220 (employee declarations); 2015 Steven Chung Decl. ¶ 28.[12]

––––––––––––––––––––

[11]Although a survey showing markedly different results would be powerful evidence for plaintiffs, a trademark plaintiff is not required to conduct a survey in order to prove infringement.  See McCarthy § 32:195 ("The courts have been careful to state that a survey is not necessary in every case."); Midwest Pet Foods, Inc. v. Societe des Produits Nestle S.A., 685 F.3d 1046 (Fed. Cir. 2012) (citing decisions of several circuits for the proposition that surveys are not required to prove likelihood of confusion).

[12]The Court OVERRULES defendants' objections to this declaration testimony about consumer inquiries.  The most substantive of these objections is that the testimony

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

Defendants offer many arguments as to why these declarations should not be credited or do not necessarily evince actual confusion, many of which a jury might find persuasive. See Reply at 8–14.  Nevertheless, those arguments are for the trier of fact to evaluate. See Entrepeneur Media, 279 F.3d at 1150–51 (where plaintiff offered testimony from two former employees that customers had asked whether there was an affiliation between plaintiff and the defendant's product, holding that "[s]uch consumer questions are some evidence of actual confusion," and that "[w]hether the questions represented actual confusion or discernment is an issue better left to the trier of fact to resolve"). Defendants also argue that the evidence of actual confusion, even if credited, is *de minimis* as a matter of law and could not weigh this factor in favor of plaintiffs.  Again, the Court disagrees: although a jury could find the evidence *de minimis* and unpersuasive, a jury could also find even a handful of instances of actual confusion to be significant under the circumstances.  See id. at 51 ("[A] reasonable juror could find *de minimis*, and thus unpersuasive, one instance of actual confusion, and the remaining evidence involves factual matters subject to dispute." (emphasis added)); Conversive, Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1092 (C.D. Cal. 2006) (explaining that even two examples of actual confusion can be "very significant" depending on the circumstances).

In sum, this factor presents genuine disputes of material fact, and weighs against granting summary judgment.

### 5.      Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353.  The Ninth Circuit "consider[s] where the goods or services

---

as to out-of-court statements by potential customers is inadmissible hearsay; however, "the majority of circuit courts that have considered" similar evidence have "found that such evidence is admissible" to show the declarant's state of mind.  Conversive, Inc. v. Conversagent, Inc., 433 F. Supp. 2d 1079, 1092 (C.D. Cal. 2006) (citing cases); see also Kreation Juicery, Inc. v. Shekarchi, No. CV 14-658 DMG (ASx), 2014 WL 7564679, at *3 n.2 (C.D. Cal. Sept. 17, 2014) (admitting similar evidence because the "inquiries are not being offered for the truth of the matter asserted" and "because the customers' inquiries are questions, they arguably do not assert anything").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

are sold, the sales and marketing methods employed, and the class of purchasers exposed to the marketing efforts." La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 876–77 (9th Cir. 2014). This factor can be informed by sales methods employed, respective price ranges, and advertising channels. Sleekcraft, 599 F.2d at 353. With regard to the use of the internet for marketing, "[t]he proper inquiries are whether both parties 'use the Web as a substantial marketing and advertising channel . . . whether the parties' marks 'are utilized in conjunction with Web-based products,' . . . and whether the parties' marketing channels overlap in any other way." Entrepreneur Media, 279 F.3d at 1151 (emphasis in original) (citations omitted).

Plaintiff "is a retailer rather than a wholesaler." Mendelson Decl. Ex. 1 (2014 Steven Chung Decl.) ¶ 5.[13] Evidence indicates that His & Her sells its products through (1) a physical store in Los Angeles, (2) its mail order catalog, (3) the His & Her website, (4) telephone, and (5) Amazon.com. Pruetz Decl. Ex. 3 (Hoon-Sil Baik Depo. Feb. 20, 2015) at 95:24–96:17.[14] Therefore, that Shake-N-Go and Model Model are wholesalers "cuts against" plaintiffs on this factor. Fortune Dynamic, 618 F.3d at 1038.[15] Also favoring defendants on this factor is the fact that plaintiff has never sold defendants' allegedly infringing products through any of its marketing channels. DUF ¶ 16; SGI ¶ 16.

---

[13]Steven Chung declared that he understands that some businesses purchase CUTICLE brand extensions from His & Her for use with their customers or clients, but that His & Her does not give businesses that intend to re-sell plaintiff's products any special discount. 2015 Steven Chung Decl. ¶ 15.

[14]Defendants object to plaintiff's evidence that His & Her sells through Amazon on the ground that Steven Chung's 2015 declaration testimony to that effect contradicts Chung's earlier declaration testimony that "His & Her itself is a retailer rather than a wholesaler, and does not use other retailers to re-sell its products to consumers." Mendelson Decl. Ex. 1 (2014 Steven Chung Decl.) ¶ 5. But as indicated above, deposition testimony from a different witness, which defendants themselves attach to the Pruetz Declaration, also supports that proposition.

[15]The Fortune Dynamic court nevertheless found genuine issues of material fact as to this factor. 618 F.3d at 1038.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     '**O**'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|----------|-------------------------|------|----------------|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

Other defendants, however, are retailers and customers of Shake-N-Go and Model Model that have sold the allegedly infringing hair extensions in retail stores, albeit different ones than plaintiff's. DUF ¶ 15; SGI ¶ 15. See Sleekcraft, 599 F.2d at 353 (finding it significant that, although the parties' products were only "sold under the same roof" at boat shows, the parties' marketing channels were "parallel"). Moreover, plaintiff's and defendants' goods are sold on the internet, including through the Amazon third-party platform. PMF ¶¶ 36, 38. Plaintiff also submits undisputed evidence that Shake-N-Go and Model Model market to consumers and try to raise consumer brand awareness, and that plaintiff and defendants advertise and market their products through magazines and on the internet. PMF ¶¶ 36, 37. Also favoring plaintiff on this factor is that the parties' products have similar price ranges, as discussed with regard to the next Sleekcraft factor. For these reasons, genuine issues of material fact exist as to whom this factor favors.

### 6.     Type of Goods and Degree of Care Exercised by Purchasers

This factor focuses on "the relative sophistication of the relevant consumer, and the degree of care likely to be exercised by that consumer." Fortune Dyanmic, 618 F.3d at 1038. Courts look to "the typical buyer exercising ordinary caution," including "the ignorant and the credulous." Id. (quoting Sleekcraft, 599 F.2d at 353). Consumers are less likely to be confused when the products involved are expensive and when they are marketed primarily to expert buyers. See Brookfield, 174 F.3d at 1060.

Arguing that consumers exercise a high degree of care in purchasing human hair extensions, defendants first point out that the parties' relevant products are designed to be attached to consumers' hair for weeks or months at a time. DUF ¶ 20; SGI ¶ 20. It is also undisputed that the relevant products come in a wide variety of lengths, weights, textures, and colors. DUF ¶¶ 21–22; SGI 21–22. Plaintiff's CUTICLE brand hair extensions are priced at approximately $27 and up for single piece units, but plaintiff's evidence suggests that single piece units are generally only sold as add-ons to multi-unit bundles or as replacements, that ten to twelve pieces are typically needed to make a discernible difference, and that a "full bundle" of its hair extensions typically sells for between $200 and $300. 2015 Steven Chung Decl. ¶ 7. The prices for defendants' Cuticle Remy XQ and Cuticle Remy Qutix hair extensions are comparable. DUF ¶¶ 23, 24; SGI ¶¶ 23, 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
| --- | --- | --- | --- |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

Defendants' argument that consumers who spend hundreds of dollars on a product that they will typically attach to their hair for weeks or months at a time exercise a high degree of care is logically persuasive. Moreover, courts have held that consumers buying relatively expensive hair and cosmetic goods exercise a high degree of care.[16] See Redken Labs., Inc. v. Clairol, Inc., 501 F.2d 1403, 1405 (9th Cir. 1974) (holding that consumers who purchase "substantially-priced" hair goods "learn of necessity to distinguish between many products designed for application to human hair"); Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) (finding a high degree of care exercised by purchasers of high-priced hair treatment products); Graham Webb Int'l v. Helene Curtis Inc., 17 F. Supp. 2d 919, 931 (D. Minn. 1998) ("Several other courts have concluded that purchasers of expensive hair and beauty aids are sophisticated buyers who exercise care in their purchasing decisions, thus reducing the likelihood of confusion."); Hair Assocs., Inc. v. Nat'l Hair Replacement Servs., Inc., 987 F. Supp. 569, 588 (W.D. Mich. 1997) (finding a high degree of care exercised in purchasing expensive personalized hair replacement system); P.F. Cosmetique, S.A. v. Minnetonka, Inc., 605 F. Supp. 662, 671 (S.D.N.Y. 1985) ("[T]he proof . . . tends to show that those who purchase top-of-the-line premium priced prestige beauty aid products can and do differentiate among packages with a number of common elements.").[17]

---

[16]Although it is true, as plaintiff points out, that case law is not evidence, courts routinely look to prior cases analyzing similar types of goods in evaluating the likelihood of confusion. See, e.g., Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) ("[C]ourts have recognized that purchasers of fragrance and skin care products also exercise a higher degree of care and brand awareness." (citing cases)). Moreover, McCarthy states that the "appropriate level of customer care and sophistication can be proven" not only by survey evidence and expert testimony, but also by "inferences drawn by a judge based on the nature of the product or its price." McCarthy § 23:95.

[17]Plaintiff cites Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964 (10th Cir. 2002), for the proposition that other courts find that consumers exercise a low degree of care with regard to hair products. But that case is less factually analogous than those cited above because it involved inexpensive shampoo, and there was record evidence that consumers purchased the products on "impulse." Id. at 975; see also Dep Corp. v. Opti-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

For these reasons, and because plaintiff points to no evidence that consumers exercise a low degree of care in selecting human hair extensions, this factor weighs in favor of defendants.  Nevertheless, the Ninth Circuit has cautioned that this factor is difficult for a court to evaluate with confidence, that even sophisticated consumers can be confused, and that brand-conscious consumers might under some circumstances "connect the like-named products more readily than an unsophisticated consumer." Fortune Dynamic, 618 F.3d at 1038.  Therefore, a reasonable juror would not necessarily have to weigh this factor heavily against finding a likelihood of confusion.

### 7.    Defendant's Intent in Selecting the Mark

"This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." Brookfield, 174 F.3d at 1059.  "A party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive consumers," but when the alleged infringer " 'knowingly adopts a mark similar to another's reviewing courts presume . . . that the public will be deceived.' " Gallo Cattle Co., 967 F.2d at 1293 (quoting Sleekcraft, 599 F.2d at 354).

Defendants argue that Shake-N-Go had no knowledge of plaintiff's use of CUTICLE on hair extensions when it selected "Cuticle Remy" for its own products. Defendants submit testimony of Shake-N-Go officer Heungwon Danny Khym to the effect that the company chose the mark not to capture His & Her's goodwill, but because "cuticle" signifies healthy, premium hair, and "remy" signifies hair with cuticles attached to it that lie in the same direction.  Pruetz Decl. Ex. 4 (Khym Depo. Jan. 16, 2015) at 54:12-17, 55:4-8, 197:20–198:24.  Khym also testified that he did not know that His & Her was selling hair extensions using the word "cuticle" as a brand when Shake-N-Go unsuccessfully applied for its "Cuticle Remy" trademark.  Id. at 71:4-15.  Additionally, Shake-N-Go Vice President Mike Kim ("Kim") testified that the name combines "two very important concepts[:] Healthy cuticles and one direction."  Pruetz Decl. Ex. 5 (Kim Depo. Jan 15, 2015) at 165:17–166:4.  Defendants also point to third-party use of the

Ray, Inc., 768 F. Supp. 710, 716 (C.D. Cal. 1991) (finding low degree of care exercised with regard to hair care products costing less than $5.00).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

term "cuticle," discussed *supra*, in support of their good faith belief that they were entitled to use the word to brand their products.

Plaintiff argues that there is evidence from which a jury could conclude that Shake-N-Go knew of plaintiff's mark when they adopted the "Cuticle Remy" brands, and intended to capitalize on that mark by creating confusion.[18]  First, plaintiff points to Kim's testimony that he knew of the "existence of" His & Her in the 1990s.  Edelson Decl. Ex. 3 (Kim Depo. Jan. 15, 2015) at 155:21–156:4.  Kim stated that he "first heard of His & Her in some kind of booklet," in connection with "hair related products" and "[p]robably" hair extensions.  Id. at 156:5-17.  But as defendants point out, there is a significant difference between knowing about the "existence of" a company and knowing about its use of a particular mark.  In addition, Kim testified in the same deposition that he did not learn that plaintiff was "selling a hair extension product called, quote, Cuticle" until sometime during these legal proceedings, and that he believed it was when a cease and desist letter was sent, which appears to have occurred in April 2011.  Id. at 157:4-17; SAC ¶ 20.  Moreover, plaintiffs did not introduce the CUTICLE mark until 2004.  SAC ¶ 15.  For these reasons, plaintiff's evidence of Kim's knowledge of His & Her's existence in the 1990s is not by itself probative of Shake-N-Go's intent in selecting the Cuticle Remy XQ and Qutix brands.

Plaintiff also, however, contends that intent to capitalize on its mark can be inferred because Shake-N-Go's attempt to register "Cuticle Remy" with the PTO was rejected because of likelihood of confusion with plaintiff's "CUTICLE" mark, and Shake-N-Go nevertheless proceeded with its subsequent rollout of the "Cuticle Remy" branded extensions.  PMF ¶ 49; RPMF ¶ 49.  Citing a decision from this district, a leading treatise states that the "junior user's continued use of a mark, after the PTO has refused registration based upon the senior user's own registration, is indicative of bad faith and a likelihood of confusion."  McCarthy § 23:120 (citing Nat'l Customer Eng'g v. Lockheed Martin Corp., No. CV 96-8938 DDP (ANx), 1997 WL 363970, at *4–5 (C.D. Cal. Feb. 14, 1997) (finding that the "intent factor weigh[ed] heavily in Plaintiff's favor" where, as here, the PTO found that defendants' mark was likely to be confused with plaintiff's registered mark, and defendants then abandoned the application but

---

[18]The parties appear to agree that Shake-N-Go is the only defendant that actually had a role in selecting the "Cuticle Remy" name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
| --- | --- | --- | --- |
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

adopted the mark as a trade name)).  Additionally, Shake-N-Go attempted to trademark "Cuticle Remy" and sent cease-and-desist letters to prevent use of that phrase, which a jury could find undercuts defendants' argument that it believed "cuticle" was generic and could not be protected.  PMF ¶¶ 44, 54, 58; RPMF ¶¶ 44, 54, 58.  Viewing this evidence in the light most favorable to plaintiff, a jury could conclude that Shake-N-Go intended to capitalize on plaintiff's mark in choosing the "Cuticle Remy" name.  This factor therefore raises genuine issues of material fact.

### 8.    Likelihood of Expansion of Product Lines

With regard to this factor, defendants argue that plaintiff has no plans to expand beyond its single store, and plaintiff counters that it hopes to increase its internet sales and explore the possibility of selling its CUTICLE brand products on a wholesale basis.  But the relevant inquiry is the "likelihood of expansion in product lines."  Brookfield, 174 F.3d at 1060 (emphasis added).   The Ninth Circuit has found that "this factor is irrelevant" where the parties' goods "are already related."  Playboy Enter., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1029 (9th Cir. 2004); see also Brookfield, 174 F.3d at 1060 (terming this factor "relatively unimportant where two companies already compete to a significant extent").  Because the Court has already determined that the relatedness factor favors plaintiff for purposes of the instant motion, the Court does not find this last Sleekcraft factor to be significant.

### 9.    Weighing of the Sleekcraft Factors

"This case is yet another example of the wisdom of the well-established principle that '[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.' "  Fortune Dynamic, 618 F.3d at 1031 (citing Entrepreneur Media, 279 F.3d at 1140).  In defendants' favor, plaintiff's mark is relatively weak (although exactly how weak raises factual issues), and the degree of care exercised by the relevant consumers appears to be high.  Nevertheless, viewing the evidence in the light most favorable to the non-moving party and drawing reasonable inferences in its favor, the relatedness factor weighs in favor of plaintiff, and there are genuine issues of material fact as to similarity of the marks, evidence of actual confusion, the overlap of marketing channels, and defendants' intent in selecting the allegedly infringing marks.  Thus, although the Court is "far from certain that consumers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:11-cv-05323-CAS(VBKx) | Date | March 30, 2015 |
|---|---|---|---|
| Title | HIS & HER CORP. v. SHAKE-N-GO FASHION, INC., ET AL. | | |

[are] likely to be confused as to the source" of defendants' hair extensions, the Court is "confident that the question is close enough that it should be answered as a matter of fact by a jury, not as a matter of law by a court." Id.[19]

**V.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** defendants' motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 03 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[19]Bolstering this conclusion is the fact that the PTO refused registration of Shake-N-Go's application to trademark "Cuticle Remy" on grounds including "a likelihood of confusion with" the CUTICLE mark.  The PTO determined that confusion was likely based on the similarity of the marks, the similarity of the goods, and the similarity of the trade channels of the goods.  See PRJN Ex. 2.  Although defendants correctly argue that the PTO's non-final decision on a less developed record should not be afforded great weight, it is another relevant consideration suggesting that this case should be tried to a jury.  See Automobile Club of S. Cal. v. Auto Club, Ltd., No. CV 05-3940 RSWL (CWX), 2007 WL 704892, at *3 (C.D. Cal. Mar. 6, 2007) (explaining that findings of a PTO examining attorney "are instructive, [but] . . . not conclusive or binding on the Court" (citing Carter–Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 801–02 (9th Cir. 1970))); Grey v. Campbell Soup Co., 650 F. Supp. 1166, 1174 (C.D. Cal. 1986) ("This confusing similarity was recognized by the Patent and Trademark Office . . . . Such uncontested administrative action is given some consideration.").